226 F.2d 946
 K. M. SCHUMACHER, Administrator of the Estate of Glennon Callanan, Deceased, Plaintiff-Appellee,
v.
Harry ROSENTHAL d.b.a. The Stevens Hat Company, Defendant-Appellant.
K. M. SCHUMACHER, Administrator of the Estate of Glennon Callanan, Deceased, Plaintiff-Appellant,
v.
Harry ROSENTHAL d.b.a. The Stevens Hat Company, Defendant-Appellee.
 No. 11375.
 No. 11376.
 United States Court of Appeals Seventh Circuit.
 October 21, 1955.
 
 Francis D. Conner, Harold G. Baker, East St. Louis, Ill., for plaintiff-appellee, K. M. Schumacher, Administrator of the Estate of Glennon Callanan, deceased, Baker, Kagy & Wagner, East St. Louis, Ill., of counsel.
 Charles M. Whealon, Daniel McGlynn, East St. Louis, Ill., for defendant-appellee, Harry D. Rosenthal, d/b/a The Stevens Hat Co., McGlynn & McGlynn, East St. Louis, Ill., of counsel.
 Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.
 FINNEGAN, Circuit Judge.
 
 
 1
 Glennon Callanan was riding as a guest passenger in an automobile operated by Paul Dudley,[1] April 12, 1952, when it collided with another automobile owned and operated by Daniel O. Nowell. Upon Callanan's death[2] from injuries sustained in that accident on Illinois Highway No. 3, near Gale, Illinois, plaintiff K. M. Schumacher was appointed administrator of decedent's estate. Plaintiff, in her representative capacity, filed suit March 27, 1953 for wrongful death under Ill. Rev.Stat., 1951, chap. 70, against defendant, Harry D. Rosenthal, d/b/a The Stevens Hat Company, alleging, in substance, that Nowell was defendant's agent. Before commencing suit plaintiff entered into a covenant not to sue with Nowell and his (Nowell's) liability insurer, for which plaintiff received $5,000. By express exclusion and reservation, in that agreement, plaintiff saved his rights against all other persons, including defendant and his business partners. After the jury assessed plaintiff's damages at $12,000, defendant moved: (i) to set aside the verdict, (ii) for a new trial and, (iii) for a reduction of the verdict by deducting the $5,000 earlier received by plaintiff under the covenant not to sue. The first two aspects were denied below, and the district judge entered an order reducing the jury's verdict in accordance with defendant's motion.[3]
 
 
 2
 In appeal number 11,375, defendant attacks the jury's verdict (as reduced) and judgment entered thereon because he asserts the district judge erred by denying defendant's motion for a directed verdict, and for refusing to allow a judgment notwithstanding the verdict. Case number 11,376 is plaintiff's cross-appeal from the reduction order entered below.
 
 
 3
 However, we will consider appeal number 11,376 first, because if there was an error impairing the verdict through reduction on defendant's motion, then obviously it would be unnecessary to explore defendant's appeal. But we think the district judge correctly allowed defendant's motion. When these appeals were argued orally before us, counsel made it clear that both plaintiff and defendant refrained from making any reference to the covenant during the trial before the jury. As we view it plaintiff seemingly recognized that under Illinois law a payment by a joint tort-feasor to a plaintiff should be considered in computing damages, but that such a matter is for a jury rather than a trial judge acting on a post-verdict motion to reduce damages. Since the Illinois Supreme Court decided New York, C. & St. L. R. R. v. American Transit Lines, 1951, 408 Ill. 336, 97 N.E.2d 264 approving a similar method, and the doctrine of reduction, followed by the district judge here, we remain unpersuaded that any other decision of Illinois courts warrants reversal of the judgment appealed on this point.[4]
 
 
 4
 Plaintiff invokes the doctrine of respondeat superior in an effort to charge defendant with Nowell's conduct. It is undisputed that Nowell, equipped with sample hats took orders for them at prices set by the defendant manufacturer. Nowell received commissions on sales made when traveling in Tennessee, Kentucky and Mississippi — the territory defendant allocated to Nowell. The accident occurred in Illinois at a time when Nowell was returning home from defendant's sales meeting; attendance, at which was, apparently, not obligatory. Adherence to the closely analogous precedent laid down in Nattens v. Grolier Society, 7 Cir., 1952, 195 F.2d 449 impels us to reject all phases of defendant's appeal in case number 11,375 centering about the relationship between Nowell and defendant. Instructions to the jury, given below, on that point apparently satisfied counsel.
 
 
 5
 A narration of facts, established by this record, relating to the collision is wholly unnecessary because we think the trial judge correctly refused to take the case from the jury, or grant a new trial. Defendant's argument, on the negligence aspect, is substantially an attack on witnesses' credibility and weight to be accorded their testimony. We have repeatedly refused to annul jury verdicts for such reasons. Willits v. Yellow Cab Co., 7 Cir., 1954, 214 F.2d 612; Carter v. John Hennes Trucking Co., 7 Cir., 1954, 210 F.2d 443.
 
 
 6
 The judgments and orders appealed in cases numbered 11,375 and 11,376, respectively, are affirmed.
 
 
 7
 Judgments affirmed.
 
 
 
 Notes:
 
 
 [1]
 In the covenant not to sue (T.R. 177) the name appears as "Paul Ducan." Plaintiff's witness, Robert Joe Dudley (T.R. pp. 54 ff) continually referred to "Paul Dudley," and that is the name employed in par. 6 of plaintiff's complaint
 
 
 [2]
 There is a stipulation of record that Glennon Callanan's death "came as the direct and proximate result of injuries sustained" in this collision
 
 
 [3]
 We find nothing in this record supporting defendant's statement in his brief at page 7: "At a pre-trial hearing it was agreed that $5,000 had been paid to the plaintiff by the Liberty Mutual Insurance Company * * * on behalf of David Nowell for a Covenant Not To Sue."
 
 
 [4]
 We are aware that New York, C. & St. L. R. R. v. American Transit Lines, 1951, 408 Ill. 336, 97 N.E.2d 264 was reversed on other grounds, and remanded. But we think the Illinois court clarified the prevailing State law when it said, 408 Ill. 336, 342, 97 N.E.2d 264, 267:
 "It is contended that the consideration received for the covenant not to sue one of two or more tort-feasors cannot be considered as payment in part of plaintiff's damages, in a suit brought against another joint tort-feasor, and it is claimed that this proposition is supported by the case of Devaney v. Otis Elevator Co., 251 Ill. 28, 95 N.E. 990. However, in Garvey v. Chicago Railways Co., 339 Ill. 276, 171 N.E. 271, and McManaman v. Johns-Manville Products Corp., 400 Ill. 423, 81 N.E.2d 137, sanction is given the doctrine that where an injury has been received by the negligence or wilfulness of two or more joint tort-feasors and suit is brought against one or more of them to recover damages, any amounts received by plaintiff for execution of a covenant not to sue some one or more of the joint tort-feasors are to be applied in reduction of the damages recoverable from those remaining in the suit. The latest pronouncement upon the subject is the well-reasoned case of Aldridge v. Morris, 337 Ill.App. 369, 86 N.E.2d 143, wherein the last two mentioned cases were followed, and which case we very carefully considered on petition for leave to appeal and after such consideration denied it. We are of the opinion that the circuit and Appellate courts properly applied the rule in this case."
 See also: DeLude v. Rimek, 1953, 351 Ill.App. 466, 474, 115 N.E.2d 561.